# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Gayle R. Pennock, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Carolyn W. Colvin, Acting Commissioner ) <br> of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No. 6:15-1490-RMG <br><br><br> **ORDER** |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on April 13, 2016, recommending that the Commissioner's decision be affirmed. (Dkt. No. 19). Plaintiff timely filed objections to the R & R, and the Commissioner filed a reply. (Dkt. No. 21, 22).

After a careful review of the full record in this matter, the decision of the ALJ, the decision of the Appeals Council denying review, the R & R and controlling legal standards, the Court finds that the failure of the Appeals Council or any other fact finder to weigh the new and material evidence from Plaintiff's treating and examining physicians and "to reconcile that new and material evidence with conflicting and supporting evidence in the record" requires "remand . . . for further fact finding." *Meyer v. Astrue*, 662 F. 3d 700, 707 (4th Cir. 2011). Moreover, the Appeals Council finding that the new and material evidence was "about a later

-1-

time" is clearly contrary to the explicit statements of the physicians who prepared the materials and violative of the Fourth Circuit standards set forth in *Bird v. Comm'r of Soc. Sec.*, 699 F. 3d 337, 341 (4th Cir. 2012). Transcript of Record ("Tr.") 2, 286, 288.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the

Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1527(b). This includes the duty to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner is obligated to "give more weight to a source who has examined the claimant than to the opinion of a source who has not." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh *all* medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)–(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Further, since

the Commissioner recognizes that the non-examining expert has "no treating or examining relationship" with the claimant, she pledges to consider their supporting explanations for their opinions and "the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and examining sources." § 404.1527(c)(3).

A claimant may offer relevant evidence to support his or her disability claim throughout the administrative process. Even after the Administrative Law Judge ("ALJ") renders a decision, a claimant who has sought review from the Appeals Council may submit new and material evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision. 20 C.F.R. §§ 404.968, 404.970(b). The new evidence offered to the Appeals Council is then made part of the record. The Social Security Regulations do not require the Appeals Council expressly to weigh the newly produced evidence and reconcile it with previously produced conflicting evidence before the ALJ. Instead, the regulations require only that the Appeals Council make a decision whether to review the case, and, if it chooses not to grant review, there is no express requirement that the Appeals Council weigh and reconcile the newly produced evidence. *Meyer*, 662 F.3d at 705–06.

As the Fourth Circuit addressed in *Meyer*, the difficulty arises under this regulatory scheme on review by the courts where the newly produced evidence is made part of the record for purposes of substantial evidence review but the evidence has not been weighed by the fact finder or reconciled with other relevant evidence. *Meyer* held that as long as the newly presented evidence is uncontroverted in the record or all the evidence is "one-sided," a reviewing court has no difficulty determining whether there is substantial evidence to support the Commissioner's decision. *Id.* at 707. However, where the "other record evidence credited by the ALJ conflicts

with the new evidence," there is a need to remand the matter to the fact finder to "reconcile that [new] evidence with the conflicting and supporting evidence in the record." *Id.* Remand is necessary because "[a]ssessing the probative value of the competing evidence is quintessentially the role of the fact finder." *Id.*

One issue that commonly arises in these *Meyer*-related cases is whether medical evidence produced after the ALJ's decision should be considered in reviewing the Commissioner's decision denying disability or whether the claimant should be required to file a new disability claim. The Fourth Circuit provided considerable guidance regarding this issue in *Bird*, 699 F.3d 337. *Bird* held that the newly produced medical evidence, outside the relevant time period of the claim, should be considered if there is evidence of linkage between the earlier relevant medical evidence and the newly produced medical evidence that may be "reflective of a possible earlier and progressive degeneration." *Id.* at 341. The newly produced evidence need not expressly state a retrospective diagnosis.

## Factual Background

Plaintiff, a former custodial employee at Clemson University, had a long history of severe chronic back pain that reportedly arose from two work-related injuries in 2003 and 2006. Tr. 365–66, 403. A 2006 MRI of the lumbar spine documented the presence of significant spinal abnormalities, including (1) "moderate severity disc degeneration at L 4-5 to the left;" (2) "disc bulge and broad central protrusion with annular tear" at L 4-5; (3) "moderate severity L4-5 facet arthropathy" at L4-5; and (5) "disc protrusion at L5-S1 with annular tear" on the right side. Tr. 400. Plaintiff's care regarding her chronic back pain has been managed since 2004 by Michael Grier, a pain management specialist.

Over the years, Dr. Grier employed various procedures and methods to provide Plaintiff relief from her chronic back pain. These included lumbar facet joint injections, medial branch blocks, radio frequency lesioning of the medial branch nerves, use of a TENS unit and extensive physical therapy. All of these methods provided Plaintiff only short-term relief. Tr. 365–66, 377, 389, 390. Dr. Grier also considered a surgical referral from time to time, but observed at one point that her multi-level disc degeneration did not make here "a candidate for conventional surgery." Tr. 382, 386, 388, 392, 438. Plaintiff's failure to realize any sustained improvement with the various treatment modalities and the apparent lack of a surgical option left Dr. Grier with the use of narcotic pain medications as the primary tool for treating Plaintiff's chronic pain. Over time, Dr. Grier treated Plaintiff with a variety of pain medications, including Lortab, Methadone, and Diclofenac. Tr. 384, 397, 399. Dr. Grier frequently described Plaintiff's condition as "stable" on her current medication regimen when she periodically appeared in his office for her medication refills. Tr. 393, 394, 396, 397, 398, 446, 448, 450, 465.

Throughout Dr. Grier's treatment of Plaintiff, he never documented any significant abnormalities from his physical examinations of Plaintiff. Despite these rather benign findings on physical examination, Plaintiff complained of persistent back pain, sometimes more severe than at other times. Plaintiff's pain appeared to worsen after a second work related injury in 2006, and her November 2006 MRI documented progressive degeneration of her disc disease as compared to a 2004 MRI. Tr. 365-67, 391, 400, 418-19.

Plaintiff continued to work at Clemson until August 2011, when she determined that her back symptoms had progressed to the point she could no longer tolerate the pain associated with

her work. Plaintiff asserted that her back pain had progressively worsened and was essentially debilitating her, limiting her capacity to work or even perform routine activities of daily living. Dr. Grier documented Plaintiff's worsening symptoms in his office notes. On June 28, 2010, Dr. Grier noted that Plaintiff "goes to work, and comes home and had very little in the way of outside activity over the last two years because of her pain." Tr. 399. In January 2011, Plaintiff was examined by Dr. Carol Burnette, a pain management specialist, at the request of Dr. Grier. Dr. Burnette documented that Plaintiff's back, hip, SI joint and leg pain were at an "8" on a 10 point pain scale (10 being the highest). After conducting a thorough review of Plaintiff's medical records and radiological studies, taking a detailed history and performing a physical examination, Dr. Burnette diagnosed Plaintiff with "chronic severe left lower back pain, SI joint and leg pain . . . related to previous work injury in 2003 and subsequent reinjury in 2006." Tr. 367. Dr. Burnette recommended permanent work restrictions of lifting no more than 28 pounds and "no prolonged standing, sitting or walking at one time." Tr. 368.

Dr. Grier observed in a June 2011 note that Plaintiff "is stable as long as she is not doing much physically. If she exerts herself at work, she has a lot of problem with back pain." Tr. 447. Two months later, Plaintiff quit work, and she has not returned to any form of employment since her alleged disability onset date of August 26, 2011. Notably, Dr. Grier did not perform, prior to Plaintiff's Social Security administrative hearing, any type of formal assessment of her functional work capacity, including such areas as her ability to stand, sit or walk for any sustained period during the work day and the amount of weight she could lift regularly and occasionally as part of her job.

The administrative record included chart reviews of Plaintiff's medical records by two non-examining and non-treating physicians, Dr. Carl Anderson and Dr. Hugh Clark. Both chart reviewers reached virtually identical conclusions, finding that Plaintiff could sit, stand, and walk up to six hours in an eight-hour work day, could lift 25 pounds frequently, and could lift 50 pounds occasionally. Tr. 101–03, 114–16. These reports by the chart reviewers provided no reference to any medical record that formed the basis for those assessments regarding Plaintiff's capacity to sit, stand, walk, or lift.

An administrative hearing was conducted by an ALJ on May 22, 2013. Plaintiff described living with severe, unremitting pain that limited her capacity to stand or walk for more than short periods. Tr. 85-86. She described the pain as never going away and her prescribed pain medications "only brings it down a notch or two . . . It stays with you. It never goes away." Tr. 86. A vocational expert testified at the hearing that if Plaintiff's chronic pain prevented her from consistently working an eight-hour day or would result in three or more absences from work per month, then there would not be jobs available in the marketplace for her. Tr. 92.

The ALJ issued a decision in Plaintiff's case on August 12, 2013, concluding that she was not disabled under the Social Security Act. Tr. 50–77. In reaching that conclusion, the ALJ found that Plaintiff had severe impairments that included degenerative disc disease of the lumbar spine, including spondylosis and facet arthropathy, degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome post release, right AC joint arthropathy, obesity, and depression. Tr. 52. Despite these multiple severe impairments, the ALJ concluded that Plaintiff maintained the residual functional capacity to perform light work, which included the capacity to lift 10 pounds frequently and 20 pounds occasionally, and to sit, stand, and walk up to six hours

in an eight-hour day. Tr. 57.

The ALJ's findings rejected significant portions of the expert opinions offered by the chart reviewers, Drs. Anderson and Clark, and the examining physician, Dr. Burnette. The opinion of the chart reviewers that Plaintiff could lift 25 pounds regularly and 50 pounds occasionally was given no weight by the ALJ, finding instead that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally. Tr. 57, 101, 114. The ALJ did, however, adopt the opinion of the chart reviewers that Plaintiff was capable of sitting, standing, and walking six hours in an eight-hour day, rejecting the opinion of the examining pain management specialist, Dr. Burnette, that Plaintiff that she could have "no prolonged standing, sitting or walking at one time." Tr. 368. The ALJ noted, in rejecting Dr. Burnette's findings, that she was only an examining physician and had "no treatment relationship with the claimant." Tr. 63.

The ALJ recognized that she had no detailed functional assessment performed by Dr. Grier, Plaintiff's long serving treating specialist physician. The ALJ did make reference to Dr. Grier's June 2011 office note that Plaintiff was "stable so long as not doing anything physically" and "has lots of problem[s] with back pain" if she exerted herself. The ALJ dismissed this statement by Dr. Grier, concluding that the physician "might have influenced the claimant to over report her limitations and symptoms" during this visit because he was completing a questionnaire for her that day. Tr. 66. The ALJ provided no further support for this rather dubious speculation. The ALJ ultimately concluded, after dismissing Dr. Grier's June 2011 office note, that she believed that "Dr. Grier's records generally support the findings in this decision." Tr. 70.

Shortly after the ALJ decision was issued, Plaintiff's counsel requested review by the Appeals Council and submitted to the Appeals Council assessments completed by Dr. Grier on

-9-

September 16, 2013, that markedly differed from the ALJ's findings about Plaintiff's capacity to sit, stand, walk, and lift. Dr. Grier's findings were as follows:

1. Plaintiff could lift only less than 10 pounds frequently and 10 pounds occasionally. Tr. 277.

2. Plaintiff could stand or walk a total of two hours and sit a total of six hours in an eight-hour work day. Tr. 278.

3. Plaintiff's treatments had produced little appreciable improvement and that her pain would likely worsen over time. Tr. 283.

4. Plaintiff's condition would likely result in absences of greater than four per month. Tr. 284.

5. Plaintiff's spinal abnormalities were not based on subjective complaints of the claimant and were confirmed by her 2006 lumbar spine MRI, which documented the presence of lumbar spine disc protrusion, an annular tear and facet arthropathy. Tr. 280, 286.

6. Plaintiff's impairments were permanent and rendered her incapable of full time work, even at a sedentary level. Tr. 286.

7. Plaintiff's impairments and limitations set forth in the assessments were present from August 26, 2011, the date of Plaintiff's claimed onset date of disability, to the present. Tr. 286, 288.

Additionally, Dr. Burnette, the pain management specialist who had performed the 2011 examination of Plaintiff, conducted a follow up examination on September 16, 2013, reaching essentially the same conclusions, and she co-signed each of assessments signed by Dr. Grier. Tr.

273–288. Thus, for the first time, the record now contained detailed findings and conclusions of Plaintiff's long-treating and examining pain management specialist physician, Dr. Grier, and such findings were concurred in by the only other examining physician in the record, Dr. Burnette.

Despite the submission of new and material evidence from Plaintiff's treating specialist physician and a specialist examining physician that conflicted with the findings of the ALJ and evidence relied upon by the ALJ, the Appeals Council denied review. In reaching that conclusion, the Appeals Council stated that it had reviewed Dr. Grier's and Dr. Burnette's newly submitted assessments, and they did not provide a basis for changing the ALJ decision because the "new information is about a later date. Therefore, it does not reflect the decision about whether you were disabled beginning on or before August 12, 2013." Tr. 2. Following the Appeals Council decision, Plaintiff timely appealed the Commissioner's adverse decision to this Court.

## Discussion

At the outset, it is quite clear that the Appeals Council's decision not to review the newly submitted medical assessments of Dr. Grier and Dr. Burnette was based on a clear error of fact, that the assessments were "about a later time" and did not address the issue of "whether you were disabled beginning on or before August 12, 2013." Tr. 2. This is the Appeals Council's only specifically stated basis for declining to review Plaintiff's case. *Id.* Dr. Grier clearly stated in the newly submitted assessments that his opinions related to the period of August 26, 2011 to the present. Tr. 286, 288. The fact that the Appeals Council overlooked this explicitly stated fact in two different portions of the assessments raises real doubts in the Court's mind whether much

-11-

care was given by the Appeals Council in reviewing this new and material information.

The law on this issue could not be clearer in this Circuit. Medical assessments performed after the relevant time period of the Plaintiff's claim "are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." *Bird*, 699 F.3d at 340. Where the opinions offered support a possibility of "linkage" to the earlier period, such opinions constitute relevant evidence and could provide the "most cogent proof" of the claimant's disability during the relevant earlier period. *Id.* at 341.

The record here creates no mystery that Dr. Grier's newly submitted materials were linked to the relevant time period at issue in this matter. Indeed, it is hard to imagine a clearer statement of that linkage than was provided by Dr. Grier. Thus, the Appeals Council's refusal to consider the new and material information because it was erroneously believed to be "about a later time" constitutes legal error and, alone, mandates remand.

There is a second and independent basis for reversal and remand, the failure of any fact finder to weigh the new and material opinions of Plaintiff's primary treating specialist physician, Dr. Grier, and reconcile it with the existing record evidence supporting and conflicting with Dr. Grier's findings and opinions. As the Fourth Circuit held in *Meyer*, where "no fact finder has made any findings as to the treating physician's [newly submitted] opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record," it then is necessary to remand "for further fact finding." 662 F.3d at 707. This situation is particularly compelling where the newly submitted information is from a treating physician and fills an "evidentiary gap" in the record. *Id.*

The Commissioner invites this Court to weigh this new evidence and to reject it out of

hand because "the additional medical evidence from Dr. Burnette and Dr. Grier would not change the outcome of the case . . . ." (Dkt. No. 16 at 17). *Meyer* makes it clear that this approach is inappropriate where the evidence in the record is not "one sided" and is conflicting. As the *Meyer* Court observed, "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance." 662 F.3d at 707.

On remand, the Commissioner is directed to re-weigh all of the evidence in this matter, giving proper consideration to the opinions of Dr. Grier, Dr. Burnette and the chart reviewers under the standards of the Treating Physician Rule. Contrary to the rather strident brief of the Commissioner on appeal, the Court did not find Dr. Grier's new assessments inconsistent with his medical record. There is a difference between a physician expressing an opinion in a patient's record regarding her functional capacity to perform work and expressing no opinion. In this matter, Dr. Grier made limited references in the claimant's medical record regarding his opinion concerning Plaintiff's functional capacity to work, but he did make comments over the years indicating that he believed that Plaintiff's pain was real and severe. Tr. 383 ("My impression is the patient still has significant pain in her low back despite our interventions with medications."); Tr. 390 ("She is having increasing pain on the right side"); Tr. 399 ("She has a lot of trouble getting out of bed in the morning . . ." and a "lot of transfer difficulty." "She . . . has had very little in the way of other outside activity [other than work] over the last two years because of her pain."); Tr. 447 ("She is stable as long as she is not doing much physically. If she exerts herself at work, she has a lot of problem with back pain.").

It would have been far better for Dr. Grier's assessments delivered for the first time to the

Appeals Council to have been available to the ALJ prior to the issuance of her decision. But the regulations of the Social Security Administration permit the submission of new and material information by the claimant at the Appeals Council stage, and *Meyer* makes clear that where that new and material information conflicts with other record evidence credited by the ALJ, a fact finder must weigh all the record evidence and reconcile the conflicting evidence and opinions. Remand is necessary to weigh the full record in this matter in accord with controlling legal standards, including the Treating Physician Rule.[1]

## Conclusion

Based upon the foregoing, the Court hereby **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to Sentence Four of 42 U.S.C. § 405(g). Since this matter has been pending for nearly five years, the Commissioner is directed to conduct an administrative hearing in this matter and issue a decision within 120 days of this order.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

June 23, 2016
Charleston, South Carolina

---

[1] Plaintiff will be on remand "an individual approaching advanced age (age 50-54)" and would likely be deemed disabled on this record if she was limited to sedentary work. 20 C.F.R. 20 C.F.R. Pt. 404, Subpt. P., App. 2 § 201.00(g).

-14-